**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Cowboy,<br><br>　　　　　Plaintiff,<br>v.<br><br>Ryan Zinke, Secretary of the U.S. Department of the Interior,<br><br>　　　　　Defendant. | No. CV-16-08094-PCT-DGC<br><br>**ORDER** |

Plaintiff David Cowboy filed a complaint against Defendant Ryan Zinke in his capacity as Secretary of the U.S. Department of the Interior, alleging discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* Doc. 1; Doc. 45 at 1 n.1.[1] Defendant now moves for summary judgment. Doc. 45. The motion is fully briefed and no party has requested oral argument. For the reasons stated below, the Court will deny the motion.

**I.    Preliminary Issues.**

　　**A.    Alleged Non-Disclosure of Declarations.**

Plaintiff's opposition to the motion for summary judgement includes declarations of Darnell June (Doc. 53-1), Martha Tate (Doc. 53-2), Dorothy Honyumptewa (Doc. 53-3), Jeannette Honanie (Doc. 53-4), and Linda Tsinnijinnie (Doc. 53-5).

---

[1] Citations throughout this order are to page numbers placed at the top of each page by the Court's electronic filing system.

Defendant asks the Court to exclude these declarations because none of the information contained in them "was disclosed in [Plaintiff's] initial disclosures or his written discovery responses." *Id.* at 2. Specifically, Defendant asserts that Plaintiff's disclosures "stated nothing about statements [Phyllis] Yazzie supposedly made on her first day, allegations of other similarly situated employees, or the purported hiring [of] a string of younger workers to replace older ones." *Id.* at 4. Defendant faults Plaintiff for "produc[ing] these Declarations for the first time after discovery closed and during the middle of dispositive motions." *Id.*

Defendant identifies two sources for Plaintiff's disclosure obligation.

The first is an employment litigation protocol developed by experienced employment litigation counsel with the assistance of the Advisory Committee on the Federal Rules of Civil Procedure. Doc. 54 at 2. The Court's case management order required the parties to comply with the protocols, copies of which were distributed at the case management conference. Doc. 18 ¶ 1.[2] Defendant relies on the obligation in paragraph 3(a) of Plaintiff's production protocols, which required Plaintiff to "[i]dentify persons the plaintiff believes to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit, and a brief description of that knowledge." These disclosures were to be made in lieu of disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure.

Second, Defendant served interrogatories asking Plaintiff to "[i]dentify each and every individual having knowledge of the discriminatory incidents and events at issue in

---

[2] These employment case protocols are designed to reduce discovery costs by increasing the amount of information disclosed by each party at the outset of the case, and have been used by several dozen district and magistrate judges throughout the United States. The protocols have been studied by the Federal Judicial Center and found to reduce discovery disputes. *See* Emery Lee & Jason Cantone, Federal Judicial Center, *Report on Pilot Project Regarding Initial Discovery Protocols for Employment Cases Alleging Adverse Action*, Federal Judicial Center (Oct. 1, 2015), https://www.fjc.gov/content/309827/report-pilot-project-regarding-initial-discovery-protocols-employment-cases-alleging. The Court has discontinued use of the employment protocols because it is now participating in the Mandatory Initial Discovery Pilot Project sponsored by the Judicial Conference of the United States, a pilot that requires more robust initial disclosures in all civil cases, not just employment cases. *See* General Order 17-08.

this lawsuit," including "[a] description of the knowledge possessed by each individual." Doc. 56-3 at 9. The interrogatory specifically stated that it was "designed to elicit a more expansive response than the names provided pursuant to Rule 26(a)(1)(A)(i)." *Id.*

Plaintiff made his initial disclosures under the employment protocols on November 2, 2016. Doc. 56-2. The disclosures identified 15 people who had knowledge of the case, including four of the five witnesses who signed declarations attached to Plaintiff's response: Linda Tsinnijinnie, Darnell June, Dorothy Honyumptewa, and Jeannette Honanie. *Id.* at 4. The disclosures stated that "[a]ll of these witnesses have knowledge of the Age Discrimination, the 'Non-Renewal' of my contract, being replaced by a young person[,] and the demotion due to my age." *Id.* at 5. The disclosures did not identify Martha Tate, the fifth declarant. *See id.* at 4-5.

Plaintiff responded to Defendant's interrogatories on December 5, 2016, and identified 11 people with knowledge of the alleged discrimination. This list included Linda Tsinniginnie, Dorothy Honyumptewa, Jeannette Honanie, and Martha Tate, but omitted Darnell June, even though he had been identified in the initial disclosures. Doc. 56-3 at 9-12. Plaintiff provided a one-paragraph description of each individual's relevant knowledge. *Id.*

The Court cannot conclude that the declarations of Linda Tsinnijinnie, Darnell June, Dorothy Honyumptewa, or Jeannette Honanie should be excluded on the basis of Plaintiff's initial disclosures. The employment protocols required Plaintiff to identify persons with knowledge about the case and to provide "a brief description of that knowledge," and Plaintiff complied with respect to these four witnesses. He identified them and stated that they all "have knowledge of the Age Discrimination, the 'Non-Renewal' of my contract, being replaced by a young person[,] and the demotion due to my age." Doc. 56-2 at 5. This was indeed a brief description, but the protocols required no more.

Defendant's interrogatories sought more information, but were still phrased only in general terms. They sought the identity of "every individual having knowledge of the

discriminatory incidents and events at issue in this lawsuit," but then asked only for "[a] description of the knowledge possessed by each individual." Doc. 56-3 at 9. Defendant did not ask for a detailed description of the testimony each witness might provide, nor did he ask whether any witness had or would provide a declaration in this case. *See* Doc. 56-3.

The purpose of the employment protocol disclosures was to identify witnesses with relevant information and enable Defendant to decide whether to depose them. That is the same purpose as the initial disclosures required by Rule 26(a)(1), as courts have noted. *See Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 664 (D. Colo. 2015) ("'Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed.'" (quoting Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment)). By requiring only a "brief description" of the witnesses' knowledge, the employment protocols did not call for detailed disclosures.

Defendant's interrogatories requested more information, but they were not specific. They asked for only "[a] description of the knowledge possessed by each individual." Doc. 56-3 at 9. They did state that they sought to "elicit a more expansive response than the names provided pursuant to Rule 26(a)(1)(A)(I)," but this was ambiguous. By requesting the name of every individual with knowledge, the interrogatories already were seeking more information than Rule 26(a)(1), which requires disclosure only of persons Plaintiff "may use" to support his claims. Fed. R. Civ. P. 26(a)(1)(A)(i). If Defendant meant that he was seeking "a more expansive" description of what the witnesses knew, he did not say so clearly. He sought "a more expansive response than the *names*" required by Rule 26(a)(1), and requested only a "description" of their "knowledge." Doc. 56-3 at 9 (emphasis added).

The Court will not exclude the declarations of Linda Tsinnijinnie, Darnell June, Dorothy Honyumptewa, and Jeannette Honanie on the basis of nondisclosure. Plaintiff identified each of these witnesses in his initial disclosures and told Defendant that they

- 4 -

had knowledge of the age discrimination alleged in the case. Doc. 56-2 at 4-5. Plaintiff provided a more complete description of the knowledge of three of these witnesses in his interrogatory responses – Tsinnijinnie, Honyumptewa, and Honanie. Doc. 56-3 at 9-12. Although Plaintiff omitted Darnell June from those responses (*id.*), he already had identified June as a person with knowledge of the alleged discrimination (Doc. 56-2 at 4-5.). Defendant apparently did not seek clarification when June was omitted from the interrogatory responses.

Defendant chose not to depose any of these four witnesses despite their having been identified early in the discovery process as persons with knowledge of the alleged age discrimination. Defendant cites no authority for the proposition that witnesses can be precluded from testifying because the precise details of their testimony were not included in initial disclosures or in response to an interrogatory seeking only a "description of the knowledge" they possessed. Defendant cites two cases in support of his argument, but each concerned witnesses who were never identified during discovery. *See Poitra*, 311 F.R.D. at 664 ("It is undisputed that Plaintiff Poitra did not include Ms. Ortega in his initial Rule 26(a)(1) disclosures or in any written supplemental disclosure provided to Defendants prior to the final pretrial conference"); *Smith v. Aurora Pub. Sch.*, 318 F.R.D. 429, 430 (D. Colo. 2016) (plaintiff's response to summary judgment motion "included affidavits from seven individuals she had never disclosed under Federal Rule of Civil Procedure 26(a)(1)(A)(i) or 26(e)"). Witnesses Tsinnijinnie, Honyumptewa, Honanie, and June were disclosed, as was a general description of their knowledge, and Defendant identifies no other discovery request that sought the specific information contained in their declarations. The Court also notes that the declarations are dated October 5 and 6, 2017 – after Defendant's summary judgment motion had been filed. The declarations thus were not in existence during the discovery period, and the Court can no more forbid Plaintiff from obtaining declarations from them for purposes of opposing summary judgment than it could preclude him from calling them to testify at

trial. If Defendant wanted to know the details of what these witnesses would say, he could have deposed them or served more specific written discovery requests.

Martha Tate is different. Plaintiff did not identify her in his initial disclosures and therefore did not assert that she generally had knowledge of the alleged age discrimination. *See* Doc. 56-2 at 4-5. Plaintiff did include her in his interrogatory responses, but provided a very narrow description of her knowledge: "Martha Tate was a School Board Member for Shonto School. Martha witnessed the ELO Adson making a statement during orientation of the school year 2010 at Greyhill High School Auditorium[.]" Doc. 56-3 at 12. Ms. Tate's declaration concerns matters well outside this narrow description: statements made by Phyllis Yazzie at a staff orientation meeting in August 2010, and Ms. Yazzie's discriminatory actions while Tate was at the Kaibeto school. Doc. 53-2 at 1-2. Because Defendant was never apprised of this area of knowledge and was never told that Tate had knowledge of the alleged age discrimination generally, the Court concludes that Defendant was never afforded a fair opportunity to decide whether to depose her. The Court finds that the failure to make this disclosure was neither substantially justified nor harmless, and therefore will not consider the Tate declaration. Fed. R. Civ. P. 37(c)(1).

## B. Other Alleged Defects in the Declarations.

Defendant also asks the Court to disregard the declarations because "they are conclusory, lack foundation, are not based on personal knowledge, and contain opinions." Doc. 54 at 5. A trial court may consider only admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The evidence may be submitted in a declaration, which would itself be inadmissible hearsay at trial, but the declaration or the party presenting it must demonstrate that the declarant could present the evidence in admissible form at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial"); *Fraser v. Goodale*, 342

F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). Thus, "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court will consider the Tsinnijinnie, Honyumptewa, Honanie, and June declarations, but only insofar as the testimony could be submitted in admissible form at trial. The Court finds many instances of inadequate foundation, vague assertions, unsupported opinions, and irrelevant facts in the declarations. In the portion of this order that follows, the Court will cite only to those portions of the declarations that are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**C.    Defendant's Supplemental Evidence.**

Defendant moves to file a supplemental statement of facts with its reply brief. Doc. 55. The Court's local rules were amended on December 1, 2017, to provide that reply statements of fact may not be filed. LRCiv 56.1(b). Because the reply brief in this case was filed in October, the Court will apply the law that existed at the time.[3]

While a party may not file "new" evidence with a reply, it may file "rebuttal" evidence to contravene arguments first raised by the non-moving party in its opposition. *TSI Inc. v. Azbil BioVigilant Inc.*, No. CV-12-00083-PHX-DGC, 2014 WL 880408, at *1 (D. Ariz. Mar. 6, 2014). After examining Defendant's supplemental statement of facts and exhibits, the Court concludes that some portions constitute rebuttal evidence the Court can consider. Specifically, the Court will consider Defendant's Exhibits H (Doc. 56-2) and I (Doc. 56-3) to address the preliminary issues above. The Court will

---

[3] The Court therefore need not decide whether an exception to Local Rule 56.1(b) may be permitted by the Court.

also consider Ms. Yazzie's supplemental declaration (Doc. 56-4), but only insofar as it provides specific rebuttal evidence to assertions by Plaintiff.[4]

## II. Background.

The Court will describe the facts cited by Defendant in support of its motion. Plaintiff worked as a contract employee for Defendant's Kaibeto Boarding School from 1997 to 2012. His responsibilities included maintaining the safety, sanitation, and repair of the student dormitory. Doc. 46-3 ¶ 3; Doc. 49-1 at 3-4. Ms. Yazzie began supervising Plaintiff in the fall of 2010 when Defendant hired her as the new principal of the school. Doc. 53-1 ¶ 5; Doc. 56-4 ¶ 2. At the time of her arrival, Ms. Yazzie considered the condition of the dormitory to be unacceptable. Doc. 53-1 ¶ 5; *see also* Doc. 49-1 at 5. She reported this to the school board in August 2010. Doc. 53-1 ¶ 5.

In November 2010, Ms. Yazzie provided Plaintiff written documentation of continuing concerns she had with his performance despite prior efforts to address them. Doc. 46-2 at 45. These issues included "[i]nadequate supervision of residential students and staff members," "[c]leanliness of residential areas," and "[u]nsafe areas in the residential building." *Id.* Although Ms. Yazzie intended to demote Plaintiff in November 2010 from his dormitory manager position, she decided to delay this action in light of Plaintiff's promise to improve. Doc. 46-3 ¶ 5. Ms. Yazzie renewed his contract in the spring of 2011. *Id.*

In November 2011, Ms. Yazzie issued a letter of reprimand to Plaintiff for his actions related to an injury sustained by a student in the dormitory. Doc. 46-2 at 47-51. Ms. Yazzie noted that she asked Plaintiff in the fall of 2010 to cut bed frames that extended beyond their mattresses, which could cause an injury. *Id.* at 47. Plaintiff in turn asked the maintenance staff to address the issue in the fall of 2010 and again in the fall of 2011. *Id.* at 50; Doc. 49-1 at 6-7. But Plaintiff did not follow up to ensure that the work was completed. Doc. 46-2 at 47. On September 5, 2011, a protruding bed frame

---

[4] Even if the Court considered all of Ms. Yazzie's supplemental declaration, the decision on Defendant's summary judgment motion would not change.

- 8 -

caused multiple wounds to a female student who required immediate medical attention and stitches. *Id.* Ms. Yazzie found that Plaintiff violated school policy by failing to report this incident to the student's parents or write an official incident report. *Id.* She also cited Plaintiff's failure to attend a meeting about this incident without obtaining authorized leave. *Id.* at 47-48.

In March 2012, Defendant terminated Plaintiff's on-campus housing agreement because Plaintiff allegedly failed to secure utilities for his apartment, as required by the contract. *Id.* at 23. The housing agreement also required any vacating tenant to replenish the propane tank to the level at which he received it. *Id.* Plaintiff failed to do so. *Id.* at 39.

Ms. Yazzie decided not to renew Plaintiff's contract for the fall 2012 school year. Doc. 46-2 at 4, 14; Doc. 46-3 ¶ 2. Plaintiff was 58 years old at the time. Doc. 46-2 at 2. In a March 20, 2012 notice of nonrenewal, Ms. Yazzie stated that this decision was based on Plaintiff's absence without leave, his removal from school housing, and his failure to replenish the propane tank. Doc. 46-2 at 4. Ms. Yazzie later explained that Plaintiff's performance issues factored heavily into her decision not to renew his contract. *Id.* at 4-5. She cited (1) the deteriorating condition of the dormitory and Plaintiff's alleged lack of motivation to address it (*id.*); (2) Plaintiff's pattern of absence without leave (*id.* at 5-6); (3) "numerous complaints from [Plaintiff's] employees that he could not be found, or that after looking for him, they found him sleeping in his office" (*id.* at 6); and (4) Plaintiff's decision to give the all-clear signal during a fire drill despite that a student and disabled employee were still in the building (*id.*).

### III. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**IV. Discussion.**

Plaintiff alleges that his demotion and the nonrenewal of his contract violated the ADEA. Doc. 1. That statute makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff employee can establish discrimination through either direct or circumstantial evidence. *See France v. Johnson*, 795 F.3d 1170, 1172-74 (9th Cir. 2015).

**A. Direct Evidence of Discriminatory Motive.**

The Ninth Circuit has explained:

> Direct evidence, in the context of an ADEA claim, is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision. Direct evidence, which standing alone can defeat summary judgment, must be evidence directly tied to the adverse employment decision. In contrast, stray remarks not directly tied to the decisionmaking process are not direct evidence capable of defeating summary judgment.

*Id.* at 1173 (internal quotation marks and citations omitted).

Defendant contends that Plaintiff has proffered no direct evidence of age discrimination. Doc. 45 at 4-5. Defendant argues that Plaintiff's testimony about Ms. Yazzie's allegedly discriminatory statements are ambiguous and uncorroborated. *Id.*

Plaintiff counters with testimony from himself and the four permitted declarants that Ms. Yazzie expressed her frustration with older employees on multiple occasions. Doc. 52 at 4-5. This evidence suggests that she (1) expressed her opinion in the fall of 2011 that staff employees were getting too old (Doc. 49-1 at 10); (2) chastised three older employees at a September 2011 staff meeting for their lack of enthusiasm (Doc. 53-1 ¶ 7; Doc. 53-5 ¶ 11); and (3) commented in the fall of 2012 that two older employees should just retire (Doc. 53-3 ¶ 4). Plaintiff also offers testimony that Ms. Yazzie (4) replaced Claudine Long, who was in her fifties or sixties, with Stephanie Crawford, who was in her twenties, in 2012 (Doc. 53-4 ¶ 8); and (5) replaced Nina Toledo, who was in her sixties, with younger employee Michael Yazzie in 2013 (Doc. 53-4 ¶ 9).[5] Ms. Yazzie disputes these allegations. Doc. 46-2 at 10; Doc. 46-3 ¶ 16; Doc. 56-4.

Plaintiff thus cites both direct and circumstantial evidence to support his claim, arguing that statements and actions by Ms. Yazzie are sufficient to create a genuine dispute of fact about whether Defendant discriminated. Doc. 52 at 5-7. The Ninth Circuit has instructed, however, that where a plaintiff has "presented both some direct evidence and some circumstantial evidence, it is most appropriate to consider the propriety of summary judgment under the *McDonnell Douglas* framework." *France*, 795 F.3d at 1173. The Court therefore will turn to that framework.

---

[5] Defendant contends that the Court cannot consider evidence of Ms. Yazzie's alleged discrimination against other employees. *See* Doc. 45 at 4 n.2. But Defendant offers only bare citations to cases from other districts, without analysis. The cited cases do not stand for a broad proposition that other alleged acts of discrimination are inadmissible. *See Barnett v. PA Consulting Grp.*, Inc., 35 F. Supp. 3d 11, 22-23 (D.D.C. 2014) (describing a fact-based inquiry); *Davis v. Dunn Constr. Co., Inc.*, 872 F. Supp. 2d 1291, 1318 (N.D. Ala. 2012) (rejecting evidence – after analysis – because it was unsubstantiated); *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 734-35 (S.D. Ohio 2011) (court *may* exclude this evidence under Rules 402 and 403).

### B. *McDonnell Douglas*.

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Plaintiff must first establish a prima facie case of age discrimination by showing that "he was (1) at least forty years old, (2) performing his job satisfactorily, (3) was discharged [or demoted], and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (internal quotation marks omitted); *cf. France*, 795 F.3d at 1174 (applying these elements in a failure-to-promote case). Defendant acknowledges that Plaintiff "has a protected status since he was older than forty years, that he appeared to be qualified for his former position, and that his nonrenewal was an adverse employment action[.]" Doc. 45 at 6. Defendant contends that Plaintiff cannot establish the second element (adequate job performance) or the fourth element (replacement by a younger employee or circumstantial evidence of discrimination). *Id.*[6]

#### 1. Second Element of the Prima Facie Case.

Defendant contends that Plaintiff was not performing his job adequately. Defendant cites (1) Plaintiff's October 2011 vehicle accident when he failed to ensure that students were seat belted; (2) documentation of Plaintiff's performance deficiencies in November 2010; (3) Plaintiff's subsequent demotion when he failed to ameliorate those deficiencies; (4) the November 2011 letter of reprimand regarding Plaintiff's responsibility for and response to a student's injury in the dormitory; (5) Plaintiff's

---

[6] Plaintiff relies on *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151 (9th Cir. 2010), to argue that the Court need not require all four elements of the *McDonnell Douglas* prima facie case. Doc. 52 at 8-9. Although *Hawn* counseled flexibility in the consideration of the fourth element and pretext, it did not hold that a court could find a prima facie case where a plaintiff failed to establish one of the four elements. *See* 615 F.3d at 1156-59.

failure to account for a student and disabled employee during a fire drill; and (6) Plaintiff's pattern of unreliable attendance. Doc. 45 at 8-11.[7]

Plaintiff disputes each of these allegations. Specifically, Plaintiff offers evidence that (1) the students were seat belted at the time of the vehicle accident (Doc. 53-6 at 16); (2) the conditions in the dormitory were due to resource constraints beyond his control (Doc. 53-1 ¶ 5; Doc. 53-6 at 14); (3) he was a competent and conscientious employee and had no performance complaints in the semester before Ms. Yazzie and her staff began managing the school (Doc. 53-4 ¶¶ 2-3); (4) he asked the maintenance staff to fix the bed frames before the student's injury (Doc. 46-2 at 50); (5) he never gave a premature all-clear signal during a fire drill (Doc. 49-1 at 21); and (6) he does not have a pattern of unreliable attendance or unauthorized absence (Doc. 49-1 at 26; Doc. 53-6 at 27-29, 32-33, 38-39, 42). To the extent Defendant has documentation of his poor performance, Plaintiff argues, they are fraudulent accounts created in furtherance of Ms. Yazzie's plan to discriminate against him. Doc. 53-6 at 33, 43, 46.

This dispute of facts prevents summary judgment on the second element of the prima facie case. Each side contests the facts supporting the other side's arguments. Doc. 45 at 8-11; Doc. 52 at 11-14.

This factual dispute also distinguishes this case from decisions cited by Defendant. *See* Doc. 45 at 12-16. In *Diaz*, the Ninth Circuit held that a plaintiff could not establish satisfactory performance because he consistently violated his employer's policies and he did not challenge the employer's characterization of his disciplinary history. 521 F.3d at 1206 (Renteria acknowledged his misconduct, but complained that he was the only one disciplined for it). In *Krylova v. Genentech Inc.*, 37 F. Supp. 3d 1156 (N.D. Cal. 2014), the plaintiff failed to dispute at least three of his alleged performance deficiencies. *Id.* at 1164-65. And *Scott v. Sears, Roebuck and Co.*, 395 F. Supp. 2d 961 (D. Or. 2005),

---

[7] Defendant also offers Plaintiff's removal from campus housing and his failure to replenish the propane tank as evidence of his poor job performance. Doc. 45 at 10. But Defendant has not shown that Plaintiff's failure to adhere to a housing agreement in any way affected the performance of his job.

- 13 -

expressed no specific reasoning or finding as to whether the employee established this element of his prima facie case. *See id.* at 976-79.

## 2. Fourth Element of the Prima Facie Case.

Defendant contends that Plaintiff must establish the fourth element of his prima facie case by showing that a "similarly situated employee of a non-protected class was treated more favorably than he was for the types of failures for which he was nonrenewed." Doc. 45 at 6-7. Defendant asserts that the comparator employee must be "similarly situated in all material respects" to Plaintiff, *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006), and argues that Plaintiff has failed to show that comparable employees – particularly Helena Bennett, who replaced Plaintiff – were similar situated in all material respects. Doc. 45 at 6-8; Doc. 54 at 9.

After reviewing Ninth Circuit law, the Court concludes that Plaintiff describes the fourth element of the prima facie case too narrowly. This element may be satisfied in two ways: (1) by evidence that Plaintiff was "replaced by substantially younger employees with equal or inferior qualifications," or (2) by evidence that he was "discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz*, 521 F.3d at 1207 (internal quotation marks omitted); *see also Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012); *Schechner v. KPIX-TV & CBS Broad. Inc.*, 686 F.3d 1018, 1023 (9th Cir. 2012). In *Diaz* the Ninth Circuit relied on the second method to deny summary judgment even as to a plaintiff who could not show that he was replaced by a younger worker who was equally or less qualified. 521 F.3d at 1211 n.4. The court of appeals found that "the remaining circumstantial evidence is still cumulatively sufficient to permit reasonable jurors to infer that Mancilla was discriminated against because of his age." *Id. Diaz* also instructed that the fourth element of the prima facie case is to be treated with "flexibility," and cited previous Ninth Circuit direction that "[t]he requisite degree of proof necessary to establish a prima facie case for . . . ADEA claims on summary judgment is minimal and

does not even need to rise to the level of a preponderance of the evidence." *Id.* at 1211 & n.4 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Applying these instructions, the Court concludes that Plaintiff has presented sufficient evidence to satisfy the fourth element of the prima facie case. As noted above, Ms. Yazzie declined to renew Plaintiff's employment in 2012, and Plaintiff has presented evidence that she (1) expressed her opinion in the fall of 2011 that staff employees were getting too old (Doc. 49-1 at 10); (2) chastised three older employees at a September 2011 staff meeting for their lack of enthusiasm (Doc. 53-1 ¶ 7; Doc. 53-5 ¶ 11); (3) commented in the fall of 2012 that two older employees should just retire (Doc. 53-3 ¶ 4); (4) in 2012, replaced Claudine Long, who was in her fifties or sixties, with Stephanie Crawford, who was in her twenties (Doc. 53-4 ¶ 8); (5) in 2013, replaced Nina Toledo, who was in her sixties, with younger employee Michael Yazzie (Doc. 53-4 ¶ 9); and (6) replaced Plaintiff with the younger Helena Bennett (Doc. 53-5 ¶ 14). As in *Diaz*, the Court concludes that this evidence is "cumulatively sufficient to permit reasonable jurors to infer that [Plaintiff] was discriminated against because of his age." *Diaz*, 521 F.3d at 1211 n.4.

### 3. Pretext.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action. *France*, 795 F.3d at 1173. Defendant has done so by providing evidence of Plaintiff's poor performance. Doc. 45 at 16-17. The burden therefore shifts back to Plaintiff to show that this reason is a pretext for age discrimination. *France*, 795 F.3d at 1173. Plaintiff "can demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *France*, 795 F.3d at 1175 (internal quotation marks omitted).

For reasons explained above, the Court concludes that Plaintiff has presented sufficient evidence to create a question of fact on whether Defendant's proffered reason

was a pretext for age discrimination.  This includes evidence that Ms. Yazzie expressed her view in the fall of 2011 that staff employees were getting too old; chastised three older employees at a September 2011 staff meeting for their lack of enthusiasm; commented in the fall of 2012 that two older employees should just retire; in 2012, replaced Claudine Long, who was in her fifties or sixties, with Stephanie Crawford, who was in her twenties; in 2013, replaced Nina Toledo, who was in her sixties, with younger employee Michael Yazzie; and replaced Plaintiff with the younger Helena Bennett.[8]

**IT IS ORDERED**:

1. Defendant's motion for summary judgment (Doc. 45) is **denied**.
2. Defendant's motion to file a supplemental statement of facts (Doc. 55) is **granted** as explained above.  The Clerk of Court shall accept for filing the document lodged on the Court's docket at Doc. 56.
3. The Court will hold a telephonic conference on **February 21, 2018 at 3:30 p.m.** to set a trial date and a final pretrial conference.  Counsel for Plaintiff shall initiate a conference call to include counsel for all parties and the Court.  If a dial-in number is to be used, counsel for Plaintiff shall provide the Court and counsel for all parties the dial-in information no later than the close of business on February 20, 2018.

Dated this 30th day of January, 2018.

_____
David G. Campbell
United States District Judge

---

[8] Defendant argues for the first time in his reply brief that Plaintiff cannot show pretext because Ms. Yazzie hired many employees who were over 50 years of age. Doc. 54 at 11.  The Court will not consider an argument made for the first time in a reply brief.  *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).